ROVNER, Circuit Judge,
concurring in part and dissenting in part.
In my view, the Termination provision is not ambiguous: it granted an unfettered right to either party to terminate the agreement on thirty days’ notice. Because of this conclusion, I would find that it is not necessary to address the question of whether Security Life breached the implied covenant of good faith and fair dealing when it terminated the contract. I concur in the majority’s opinion on the issues of the processing of pending applications and the denial of leave to amend the complaint. In addressing the pending applications on remand, the district court likely will have to consider the issues of the condition precedent and the implied covenant of good faith and fair dealing as it relates to the failure to approve the Peak policy. On those issues, I agree with the majority’s conclusion that summary *359 judgment is inappropriate and that a trial is needed to resolve the fact questions identified in the majority opinion. But as to the termination, I respectfully dissent.
The “Commitments” clause of the contract provides, in relevant part, that Security Life “agrees to accept at least $100,000,000 of premium per twelve month period, excluding reallocations and client payments, from July 1, 2011 until June 30, 2014[.]” The “Termination” provision specifies that “[t]his Joint Cooperation Agreement will continue indefinitely, until terminated by either party upon thirty (30) days written notice, delivered by certified mail.” The majority agrees that the Termination provision, standing alone, granted Security Life the right to terminate the contract at any time. Supra at 350-51. But the majority reads the “Commitments” clause as a “provision that committed the parties to a three-year term,” and concludes that the seemingly conflicting provisions must be harmonized. I simply do not see any language in the Commitments clause that binds either party to a particular term of years. Instead, the Commitments clause locks in financial terms that will govern the parties during the first three years of an indefinite relationship.
An example illustrates the distinction that I am drawing. Suppose a renter signs a month-to-month lease with a termination provision identical to the one utilized by the parties here. If the lease also contains a provision that states, “The rent shall be fixed at $1200 per month for the first twelve months,” no one would argue that the month-to-month contract has been transformed into a one-year lease. The rent clause would be understood to be setting the financial terms for the first twelve months of an indefinite relationship. Likewise, using the language of the contract at issue, if the lease provides, “The renter agrees to pay $1200 per month for the first thirty-six months,” it would remain a month-to-month lease, not a lease with a three-year minimum term. The rent clause, like the Commitments clause here, removes uncertainty about financial expectations but says nothing about the length of the agreement.
Purely financial terms cannot set the length of an indefinite contract. Nothing in the financial “Commitments” clause of the contract at issue here binds either party to a relationship of a definite term. The language simply commits Security Life to accepting a certain amount of premium per twelve month period for the first three years of an indefinite relationship. It would have been very easy for the parties to draft language committing them to an initial three year term. For example, they could have said that “the initial term of this agreement shall be three years, after which the agreement will continue indefinitely until either party terminates with thirty days’ notice in writing.” But they did not draft the contract that way; they drafted an agreement with an indefinite term. Indeed, the contract was subject to six express conditions precedent before the deal would even commence. See Joint Cooperation Agreement, § 2.b (listing the conditions precedent). Because there is no conflict between the Commitments clause and the Termination provision, there is no ambiguity and no need to consider extrinsic evidence.
Neither party cited a case directly on point interpreting similar language. The majority cites no controlling case and I was also unable to find one. Security Life seems to have found the closest analogue with the decision in Ferentinos v. Firstate Mortgage Corp., 1991 WL 18102 (Del.Super.Ct.1991), aff'd, 608 A.2d 726 (Del.1992). In that case, a contract provision established a five-year term of employment unless the employee died, became disabled, *360 or was terminated for cause. Another clause stated that the employer “may elect to terminate this agreement without cause at any time” by paying the smaller of one years’ salary or the balance due on the unexpired term of employment. The court found no ambiguity in those provisions, even though one stated a fixed term for the contract and the other purported to allow termination at any time.
The case is even stronger here, where there is no provision setting a particular length of time for the contract, and where the only duration-related provision states that the agreement is indefinite. As is apparent from the briefs, the agreement never really got off the ground and at best there may be some partial performance issues to be resolved. Because the contract granted either party an unlimited right to terminate the agreement on thirty days’ notice, I would affirm the district court’s grant of summary judgment in favor of Security Life on the issue of termination. I agree that the case must be remanded, however, because there are open questions of fact regarding pending applications and because the district court should have allowed Life Plans to amend its complaint. In my view, the only issues for trial relate to partial performance during the four months that the agreement was in effect.